Next case on our call of the docket is case, agenda number 20, case number 11447, Township of Jubilee v. State of Illinois. Counsel for the appellant. Thank you. Good morning. My name is Paul Burks. I'm an assistant attorney general, and I represent the State of Illinois in this proceeding. The question in this appeal is whether the State's conduct during the course of this litigation conferred jurisdiction on the circuit court to adjudicate a claim that was barred by the Immunity Act. The facts of the case are fairly simple and straightforward, and I can touch on them very briefly. The Township of Jubilee sued the State of Illinois, among others, to quiet title to a piece of real estate. The State moved to dismiss that claim on the grounds of sovereign immunity. Under the Immunity Act, the State may not be made a party or defendant in any court. The circuit court denied that motion. The State proceeded to litigate the case after its motion was denied, including filing a counterclaim alleging that it owned the disputed property, moving for summary judgment, and then the case proceeded to cross motions for summary judgment, and the circuit court ruled in favor of the Township. At that point, could the State seek a rule 304A finding after the motion was denied? It could not have sought a rule 304A finding. It was 304A deals with claims. It could or could not? It could not have sought 304A. 304A would not have been appropriate because 304A deals with claims or parties that are dismissed. So if half of a case is dismissed, if an entire claim is dismissed, you can go with 304A and seek an appeal of that portion of the case. The State could have sought under 308 an interlocutory appeal, which is a discretionary appeal, that if the circuit court decides that there's an issue of law that would lead to the resolution of the case more promptly, it can certify such a question. The appellant then can go to the appellate court and ask the appellate court to accept that question. Either the circuit court or the appellate court can reject that request. What was the reason for not pursuing the 308? The reason for not pursuing the 308 is that generally the law on 308s is that they're for exceptional circumstances, that they're very rarely permitted, and that generally we shouldn't burden the appellate courts with seeking them, that as a general rule the courts prefer to deal with questions after the final order rule, and that only in exceptional circumstances will the State seek an interlocutory appeal under 308. And we didn't find that the denial of immunity is not, we didn't find it exceptional because it's raised fairly frequently. In fact, just last term this court dealt with a case called State Building Ventures, another case where we raised a motion to dismiss on immunity grounds. That motion to dismiss was denied. We moved to cross motions for summary judgment, lost, and appealed to the Supreme Court, ultimately, who ultimately decided that we were entitled to immunity. You could have short-circuited all of this by doing that? Well, we could have requested, because under 308 it is up to the circuit court to certify the question, up to the appellate court to accept it. We could have requested it, but it's an uncertain proposition. It's a piecemeal proposition. It burdens the courts, and it's so, I would say it's common that we lose on immunity, but it's reasonably, it doesn't, as I said, it happened last term, it happened this term, it happened in the case of PHL. It happens frequently enough that if the court would like us to seek appeal of those, then perhaps it should be included in Rule 307 rather than Rule 308. But as you described in the procedure in some of these other cases, after losing the motion to dismiss, in those other cases as you described, the state went on then to move for summary judgment. Yes. Why didn't that happen here? Why file the counterclaim? Why did we file the counterclaim in this case? Well, because this case dealt with a single race of property, and I think the determination was made at the trial court level that if we were going to adjudicate the ownership of the property, it made sense to put all the chips in, in a sense, so that nothing was left out of the case. It didn't ask for anything in addition to what was being asked for in the original complaint, and what it did was it was an attempt to essentially, because if they were to win the case on the merits, we would essentially be precluded under race judicata from seeking a separate claim against them, because the same parties, the same issues would have been presented. So it just made sense to consolidate the case. I think what's critical to our counterclaim is it wasn't an, what's been described by this court as an offensive counterclaim. It wasn't a claim that tried to expand the scope of the case, seek additional remedies, or present new legal theories. It was simply a counterclaim that tried to kind of close the loop and say, well, if we're going to adjudicate this matter here, let's adjudicate the whole thing. Counsel, but doesn't the subject matter jurisdiction lie in the court of claims reactions against the state? Yes, it does. I think the plain language of the... So why were you in court? Well, we were hailed into court. We were sued. But you didn't even bring it up. Oh, we did. Well, we filed a motion to dismiss. The first thing we did is we filed a motion to dismiss on the grounds of sovereign immunity. That motion was denied, erroneously denied. So the question is after we, the first thing we said to the court is we shouldn't be here, because sovereign immunity bars this claim. And Sasse v. Kramer, I think, is very clear. A quiet title action against the state is barred by sovereign immunity. And your position, Mr. Brooks, is pretty simple, right? We've been talking about motions for summary judgment. We've been talking about counterclaims. But isn't your position is if there was no jurisdiction at the outset, the filing of the first counterclaim and then the motion for summary judgment is of no consequence, especially when you filed a motion to dismiss based on lack of jurisdiction in the first instance. Does that sum it up? Is that where we're at? That is our position. That's correct. Jurisdiction can never be waived. And the Immunity Act has been considered a matter of subject matter jurisdiction by this court. So I cite on pages 14 through 16 a number of cases where this court has said the Immunity Act precludes jurisdiction over the state. So a quiet title action is an equitable action, isn't it? Yes, it is. Where in the Court of Claims Act does the Court of Claims have exclusive jurisdiction over actions involving equitable damages? Well, it's all claims under the laws of the state of Illinois. And that has been held to include common law claims. And in Sasse v. Kramer, the court actually held it a quiet title action. A specific claim we're talking about here, that was a 1978 case from this court, Sasse v. Kramer, held that a claim for quiet title had to go to the Court of Claims. So the fact that the Court of Claims has jurisdiction over any claims arising under the laws of the state has been broadly held by this court to include common law claims, equitable claims, statutory claims, and constitutional claims. Had you prevailed on your motion to dismiss and the state wanted to litigate the issue of whose property this was, where would the state file a suit? Well, the state is always entitled to come into circuit court and bring a suit as the plaintiff. And Town of Jubilee could then have defended or filed a counterclaim. That's correct. What's the difference then, where we are now? What's the practical difference, I guess? Well, we didn't sue. We didn't choose to come into court. And it's really the discretion of the sovereign. I mean, there is sort of a quirk in sovereign immunity in that the state can never be hailed in the court, but the state can voluntarily submit itself to the jurisdiction of the court by bringing a claim. But isn't that what you did when you filed the counterclaim? Not waive, but voluntarily came into court? I don't think that's what we did when we filed the counterclaim for a couple of reasons. Now, the first reason is that we filed the motion to dismiss based on immunity first. So it was very clear that we were saying to the court, we shouldn't be here, we don't belong here. We weren't trying to game the system or adjudicate rights in that court. So it was only after we lost and we were forced to proceed in the circuit court that we filed the counterclaim. And the second reason is sort of the difference between an offensive and a defensive counterclaim. This court talked about this difference in the case of Manning v. Nickerson. That was a case where the state did sue, as in your hypothetical or in your question. The state sued, and the defendant, who was the state's neighbor and disputed where the property line should be, filed counterclaims against the state. Now, some of those counterclaims were tort claims. He said the state owes me damages for being on my property. Other of the counterclaims were what the court called property claims, where he just mirrored the state's complaint. The state said, you know, we want the property line here, we want him evicted. And he said in his counterclaim, I want the property line there and I want the state evicted. What the court said in Nickerson is the tort claims are offensive counterclaims. They can't be brought. They have to be brought in the court of claims. The defensive counterclaims, the ones that mirror the state's complaint, those will adjudicate here, even though in the first instance they probably would have belonged in the court of claims. And that's sort of what we have here. The state was not invoking the court's jurisdiction by filing a defensive counterclaim, a counterclaim that just mirrored the complaint itself. In response to the earlier question, I said we were just trying to sort of tie up the bundle all in one place and resolve all of the issues that were raised by the complaint. Had the state gone on the offensive, truly gone on the offensive by seeking additional remedies or by bringing a new claim, then the counterclaim, it would be a closer question whether the state's counterclaim would invoke the jurisdiction. But here we didn't do that. And thirdly, my third answer to your question would be just to take a step back to what Justice Thomas said earlier, which is that there was no jurisdiction over this complaint from the outset, from the beginning. And though we were forced to litigate it because the circuit court erroneously denied our motion to dismiss, we couldn't confer jurisdiction regardless of what we did in the course of that case because the jurisdiction has to be there when the case begins. So even an offensive counterclaim, I mean, if immunity truly is like subject matter jurisdiction, and this court has said that it is repeatedly, then even an offensive counterclaim wouldn't confer jurisdiction over a claim that doesn't exist. So if the motion to dismiss had been granted, then the next day you invoked the jurisdiction of the circuit court, that's different by filing a new suit? Your Honor, it is different. And the difference is the state is the plaintiff and is voluntarily bringing itself into court as opposed to being the defendant and simply defending itself or resolving the issues that are raised by the plaintiff. And that's the key difference. And that's inherent in the Immunity Act, which prevents the state from being a defendant in any case, but doesn't prevent the state from being a plaintiff. There is also a question. Now, I also wanted to mention that the appellate court's decision, if it was allowed to stand, it would be somewhat detrimental to the state's ability to litigate cases. I mean, there are consequences to the state having to sort of live with the law as the third district articulated it. And that's because they didn't just rely on the counterclaim, they relied on the motion for summary judgment and the failure to seek an interlocutory appeal. And so that creates the kind of incentive that Justice Freeman was discussing earlier, where every time we lose an immunity defense, under the third district's articulation here, we would really feel a strong interlocutory appeal every time. Otherwise, we could lose that defense. The same with summary judgments. I mean, we regularly seek summary judgment in litigation. And if our immunity defense relied on it, the preservation relied on it, there would be strong incentives not to litigate cases that way. And that would, I think, hamstring us in a lot of ways. So, I mean, that's probably why we sought the leave to appeal here, to clarify that question as to the state's conduct and whether or not it could confer jurisdiction. Because the opposite conclusion is somewhat worrisome. There's also an underlying question about whether or not the circuit court got it wrong when they denied our motion to dismiss based on sovereign immunity. You know, I'm sorry. We relied principally on the plain language of the Immunity Act. And our motion to dismiss and the court, we relied on Sasse v. Kramer, which is a quiet title action. This court has said sovereign immunity depends on the issues raised and the relief sought. In Sasse v. Kramer, the issue raised was quiet title. The relief sought was undisputed title. The court found that it belonged in the court of claims. The facts and circumstances are identical here. So it seems like we believe that our motion to dismiss was well taken. I'm just curious, if the summary judgment in your favor had been granted on the counterclaim, would the town of Jubilee have an argument that the trial court had no jurisdiction of this case? Well, jurisdiction is incurred at the outset of the case. And they didn't have it at the outset. And you didn't invoke it. Oh, if we didn't invoke it? Well, I'm saying you're arguing that you didn't invoke it by filing the counterclaim. Right. That's correct. So even if you won, you couldn't win. Well, actually, I think they would be precluded from appealing an order that was not adverse to them. I think that's why they would be unable to appeal it. I think the premise of your question is correct, that jurisdiction, it goes to the power of the court. And if the court doesn't have jurisdiction, it  And if the plaintiff had fought our motion to dismiss and won on that issue, and the court had determined that it had jurisdiction, I think that there's pretty well-settled law that a party cannot appeal a judgment or an order that is not adverse to it. So I think you would have to look at some other procedural preclusion doctrines to prevent a plaintiff from sort of gaming the system in that way, sort of fighting jurisdiction. Doesn't that allow you to game the system? You could not have possibly have lost that. Well, it doesn't allow us to game the system because we have to raise our immunity defense. If we didn't raise our immunity defense, if we never raised it, then this is what the federal courts have determined. The federal courts have determined that a state can waive its immunity in federal court. And the reason they determined that is they didn't want the states holding back their immunity defense, waiting until things were going badly in the trial courts, and then throwing immunity up there and saying, oh, we shouldn't be here in the first place. So, but we didn't do that. So even in the federal courts, we raised our immunity defense at the outset, in a motion to dismiss. We did not try to hide the ball. We wanted to be out of the circuit court. There's no dispute about that. When we were told we couldn't get out of the circuit court, then we did what I think any litigant would do, any reasonable lawyer would do, which is to say try to win the case. But preserve its defenses. So we did not try to game the system. We didn't attempt to game the system. We raised the immunity defense. We raised it again on appeal. And now we're here again pursuing that defense. So what are you asking us to do? What kind of order would you want this court to draw? I would like to reverse the appellate court's decision, reverse the judgment of the circuit court, and enter judgment in favor of the state dismissing the claim. And then the Township of Jubilee, if it so desires, can bring this case in the court of claims? No. What does the Town of Jubilee do with Peoria County? And I think there are some other defendants. Can they bring them into the court of claims? They cannot bring them into the court of claims. So they have to have two separate lawsuits. There is a, there is, there would have to be some division of the lawsuit in some way if you're going to bring the state into the case. And that is, you know, not policy-wise, you know, something that we look to all the time. But there are countervailing policies that are in place that say the state cannot be made a defendant in the circuit court. And there's really no way to avoid the plain language of that statute, which is ultimately constitutionally derived. It's Article 13, Section 4, where the Constitution says the legislature shall determine the immunity of the state. They've determined the state cannot be a party in a circuit court. So notwithstanding that some piecemeal litigation could result from this, the Immunity Act requires it. Secondarily, I'll point out that in a number of cases that hasn't been a problem as a practical matter. For the most part, these property disputes with the state have not involved multiple parties. It does appear that it would be an issue in this particular case. But as a policy matter, it has not proved to be detrimental in any way. Thank you. I think I've covered everything. If there are no further questions, we ask the Court to reverse and enter judgment for the appellee. Good morning, Justices. Dan Portis on behalf of the Appalachian Township of Jubilee. I don't want to belabor the points raised in my brief too much today. I know that's not what oral argument is for. But I do want to start with pointing out the timeline. And I think it answers or speaks to some of the issues already raised by the Court's questions. September 16, 2003, eight years ago. Complaint filed by the Township of Jubilee. State does immediately file its motion to dismiss on immunity grounds. That motion is denied. They do not seek interlocutory appeal. And I think that the states, in order for the Court to conclude that the state is correct on its arguments about interlocutory appeals and, well, we don't know if the question would be certified by the trial court and would it be taken by the appellate court. But that's just the nature of the beast, so to speak. Every litigant in the state of Illinois is bound by or governed by Rule 308. My client would have to seek an interlocutory appeal if we had a... What's the argument, though, Mr. Cordes, that somehow there is stopped from raising jurisdiction? Because they didn't file an appeal? I'm sorry? Because they didn't file an appeal, there is stopped from raising jurisdiction? I think that subject matter jurisdiction can be raised even by the Court at this point if it wanted to on its own. I think we have to get beyond that and look to... So the answer is no. But I think the Court needs to look at the context of the whole procedural history of the case where an interlocutory appeal was not filed. But then what did the state do? The state did not file its answer. It went on the offensive and filed a counterclaim. And years later, I think three or four years later, only then did it file its answer. And I think the counterclaim is important because, you know, we have kind of a tricky procedural quagmire here that the Court has identified, obviously, and that is the state of Illinois could not obtain an affirmative judgment against the township of Jubilee's case. It could defend against the township of Jubilee's case. It could defeat the township of Jubilee's argument that the title should be quieted in its favor. But if the state is going to benefit from an affirmative judgment and get the relief it sought, in other words, going on the offensive, this case winds up in the circuit court anyway. So I don't agree, you know, I think it's a fair question to say what... If jurisdiction can be raised at any time, we need a vehicle, don't we? Whether it's a stopple, you know, this counterclaim and motion for summary judgment occurred after there was a motion to dismiss in the Court. I mean, that to me seems somewhat important as well. Certainly. So how do we get around the general proposition that jurisdiction can be raised at any time? I think you can call it a stopple, you can call it preclusion, I think you can call it fairness. The way we get around that is the state initiated an action. In the procedural code in Illinois, you know, it delineates between a counterclaim, it says it's to the state, and then another section of the procedural code, I think section 613, talks about defenses. They're separate things. And so I think we get around the issue that you're addressing by saying the state actually, it initiated the action, assuming that the Township of Jubilee, let's just assume for argument's sake that the Township of Jubilee filed it improperly in the circuit court. The state filed its counterclaim, the state initiated an action in the circuit court, raising the quiet title issue. And I think that gets around the issue that you're discussing. It really is an independent action at that point. And I think that's buttressed by the fact that there is no defensive answer on file at that point. That only came on January 29th, 2008, when the state had filed its counterclaim three and a half years earlier. Didn't you acknowledge that the state can't waive immunity through litigation conduct? My point there is that the state properly filed its motion to dismiss, and I think it's preserved that argument. But I think that the real issue is, and what really happened in this case, is it filed a counterclaim. It filed a counterclaim. So really, you're saying that the counterclaim vested the trial court with jurisdiction? Correct. And I heard the phrase earlier in the argument on the first case, one of the justices said, well, isn't this a second bite at the apple? That's exactly what this is. It's a second bite at the apple. And, you know, to speak to the race judicata issues raised in the case, if the state, okay, the state lost in the circuit court, we all know that. If the state lost in the circuit court, then they're saying that they're bound by that. But they wouldn't be bound by that if they were successful in arguing that, you know, it was a null and void judgment because it was without subject matter jurisdiction. So I don't see the race judicata argument helping the state. As for my client, my client wouldn't benefit from a decision in its favor in the circuit court if it was null and void either. But I think it gets back to the main point is it's a second bite at the apple. So what, they file a motion to dismiss. They say we don't belong here, we belong in the court of claims. The trial court disagrees and says no, the action proceeds. For them to stand on the fact that there's no jurisdiction, they would be precluded from filing a counterclaim, precluded from filing a motion for summary judgment, and starting out with your client. So I don't think it's fair to file an interlocutory appeal. Isn't it enough that they say we don't belong here? Okay, you think we belong here. We'd better protect ourselves and file the counterclaim and we'll live to fight another day with respect to the jurisdiction argument. Well, the state did not have to file a counterclaim. And I think the issue of filing a motion for summary judgment is a closer question for the court, admittedly. But I think once you file the counterclaim, once you are the state of Illinois and you're not simply trying to defeat the township's claim by saying no, you are not the proper title holder, you can defeat that claim. And then you're left standing where you are at the end of the day with that decision. But once you go on the offensive, once you say no, we want title quieted in our favor, then you're really back to Manning v. Nickerson where, I mean, of course, no one would dispute that the state can file a quiet title action in the circuit courts. And that's where we are. It really doesn't, at the end of the day, sound fair or make a lot of sense. But if the circuit court had no jurisdiction to start with, how can something that would be null and void be used against the state? Well, I would like to speak to the issue as to whether the trial court lacked it in the first place. But let's assume that it was the case where the state files its counterclaim and affirmatively seeks a quiet title judgment in its favor. Because if they were going to do that independently, they would have to go to the circuit court. So I would ask the court to say, well, that's a distinction without a difference, and certainly not fair, and leads to piecemeal litigation that the court identified. Well, Justice Garvin's point is though, if they have no jurisdiction, they have no jurisdiction. They have no jurisdiction to allow the filing of the counterclaim. They had no jurisdiction. If we agree jurisdiction was only proper in the court of claims, filing it or not, you know, the first point is you don't have jurisdiction. Yes, we do. Jurisdiction is here. I mean, their position would be from the outset that they didn't even have the right to file a counterclaim, that they didn't have the right to file a motion. Well, I guess they said the state could have brought it initially. But that there was no jurisdiction on the part of the court to even allow the filings. Well, I haven't seen a case cited to that effect. I mean, I understand what the court is saying. I haven't seen a case cited to that effect. But I think once the state files its counterclaim with no final resolution on interlocutory appeal to the initial jurisdiction question, I think you have to get to the point where the state files its counterclaim and that really initiates the action if you want to assume that the court lacked jurisdiction in the first place. And I would like to present to the court what I touched on in my brief. Before you do that, was there any issue of jurisdiction as to over Peoria County and whoever else, unknown owners perhaps, over those parties in the initial action? Was there an issue? There was not an issue in this case. The Peoria County filed a response claiming no interest or title in the property. So in this case, that wasn't an issue. I think theoretically, could you say it was an issue? Yeah, I mean, it's a subdivision of government. I think the same issues would be raised. At the county level, I think the same issues could be raised. But they weren't in this case. As for the issue as to whether the circuit court possessed subject matter jurisdiction over the township's filing, there is a thread running, a common thread running through the cases I cited, Herget National Bank, Flick v. Kramer, and then other cases that have distinguished those cases. And that common thread has to do with, and I don't have my head in the same boat. I understand that those two cases named an officer of the state as opposed to the state of Illinois directly. I'm aware of that. But there are comments in those cases talking about, well, is this an interest of the state? And they talk about, well, it is in this case or it isn't in this case, depending on whether there's written record evidence in the chain of title, written easements, quick claim deed on record in the county recorder of deeds office. And so I would ask the court to consider that issue in affirming the appellate court because, you know, if you want to take this to the logical conclusion or illogical conclusion, you know, the state of Illinois has an interest in every piece of property in the state. They're a non-record owner, a non-record claimant, potentially in every case under the concept of a cheat laws. And it's the sovereign. It's the state. So, you know, you could say, if you want to take it to its ultimate conclusion, that every quiet title action in the state of Illinois needs to be filed in the court of claims because you are pursuing, theoretically, an interest that would be adverse to the state. And I think that, I think the court should avoid coming to that conclusion because I don't think that would make good sense or good policy. So I would ask the court to analyze that issue and the distinction between written evidence of record title versus not. Because I do think that those issues are raised in the Herget National Bank case and the Flick v. Kramer case. And I think the decisions in Village of Riverwoods, Sass v. Kramer, and Marriott Corp. and Gordon draw a distinction. Again, I realize those are lawsuits filed against a state officer. But the court's appellate and supreme clearly discuss the issue of written record title. And in this case, so bringing it back to this case, the state has no written evidence of being in the recorded chain of title. Frankly, and I was not the trial counsel in this case. I've only done the appellate stages. But frankly, probably the state of Illinois was made a state historic site and run by the state. Frankly, that's probably why the state was brought in in the first place. So I will conclude my comments there. I would just ask the court to consider the procedural history of this case and whether the counterclaim filed by the state gets us to the same place that ultimately everyone would be at at the end of the day. And whether the state is seeking a second bite at the apple because they lost. Thank you. Thank you, counsel. Thank you. I have some brief comments in reply. On this question of the second bite at the apple, I do think it's critical to point out that we didn't want the first bite at the apple. We said at the outset we do not want this case adjudicated in the circuit court. And only when we were compelled to stay there did we then litigate it, which I think is the proper approach when the court says it has jurisdiction over you, is to litigate the case. So it's not that we're seeking a second bite at the apple. It's that we think the first bite should have been in the court of claims and we believe it belongs there to start with. The second point, and I think Mr. Cordes has really narrowed the issue to the counterclaim, is the counterclaim, and his position is a counterclaim is a complaint. There's no difference. And if the state can file a complaint, then by filing a counterclaim it invokes jurisdiction. But a counterclaim and a complaint are meaningfully different. And the primary difference is a counterclaim can only be filed by a defendant. And a defendant in this case was the state. And the state can't be made a defendant in the circuit court. So we go back to this question that Justice Garmon raised earlier, which is if there was no jurisdiction over that complaint, how could the counterclaim have created it? And it can't. Because the defendant who filed that counterclaim was not properly in the court at the time. So it could not involve jurisdiction. And the state can't invoke jurisdiction of the court by doing so. Second, although if the state wanted to sue the Township of Jubilee, it would have to file a complaint, it is important to note that the circuit court ruled on the plaintiff's complaint, right? Not just on our counterclaim. They actually granted affirmative relief to the plaintiff, Township of Jubilee, on their complaint for quiet title, the one that we claimed there was no jurisdiction over. So it isn't just the plaintiff that is in this court. The judgment is based on their original complaint over which there was no jurisdiction. As to sort of the general principle that the state might have an interest in all in, there's really no legal support for that claim. A sheet law really doesn't a sheet to the state in Illinois. It sheets to the county. And there's really no, I don't know, there's certainly no argument in the briefs that every quiet title claim has to name the state. And it's certainly not the practice in common throughout the state for that to happen. So I'm just not, I'm not sure that the court can really rely on those stray comments or oral argument without any law to back them up. And finally, I just wanted to make a brief comment on the original question of whether or not the circuit court had subject matter jurisdiction over the claim. Mr. Cordes mentioned this sort of line of authority or these comments in various cases about whether or not the state had written title. And he acknowledged that there's another way of looking at those cases, which is those are cases that are brought against an official of the state to enjoin illegal conduct under the traditional officer suit exception. And I think all of those cases, if you look at them, can be divided into that line. Was it a claim to enjoin illegal conduct by an official of the state to land of the state, in which case it should go to the court of claims. And all the cases that fall on the land side go to the court of claims. And this one is identical, really, to Sasse v. Kramer in all relevant respects and belongs in the court of claims. Did not name an official of state government, did not allege unconstitutional taking, as some of those cases on which Mr. Cordes relied did. So I think a fair review of the case law will show that this case falls squarely within, you know, the falls squarely under Sasse v. Kramer and belonged in the court of claims. And if there are no other questions, thank you. Thank you, counsel, for your arguments today. Case number 111447, the Township of Jubilee v. State of Illinois, has taken our advisers agenda number 20. Thank you.